IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOEY PATRICK,

          Plaintiff,

    v.

HENRY COUNTY, GEORGIA,

          Defendant.

CIVIL ACTION FILE NO.

1:13-CV-1344-HLM-WEJ

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff, Joey Patrick, filed this action [1] on April 23, 2013, against defendant, Henry County, Georgia, alleging claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and disability discrimination, failure to accommodate, and retaliation, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

Now pending before the Court is Defendant's Motion for Summary Judgment [43]. For the reasons explained below, the undersigned **REPORTS** that genuine disputes of material fact exist with regard to plaintiff's FMLA and ADA claims, although summary judgment should be granted as to portions of those claims. Therefore, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I.  STATEMENT OF FACTS

The Court draws the material facts largely from the parties' submissions.  In support of its Motion for Summary Judgment, Henry County as movant filed a Statement of Undisputed Material Facts ("DSMF") [43-2].  See N.D. Ga. R. 56.1(B)(1).  As required by Local Rule 56.1B.(2)a, Mr. Patrick as respondent submitted Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("R-DSMF") [56-1].  As required by Local Rule 56.1B.(2)b, Mr. Patrick submitted Plaintiff's Statement of Material Facts ("PSMF") [56-2], to which defendant submitted a response as required by Local Rule 56.1B.(3).  (See Def.'s Resp. to Pl.'s Statement of Material Facts ("R-PSMF") [67].)

In those instances where a party admits the other's proposed fact, the Court deems it undisputed for purposes of this Report and Recommendation and cites both the proposed fact and the response.  In those instances where a party denies a proposed fact (in whole or in part), the Court reviews the record to determine whether the proposed fact is disputed and, if so, whether any dispute is material.  The Court sometimes modifies a party's proposed fact per the record cited in the other party's response.  In those instances where a party objects to the other's proposed fact (in whole or in part), the Court reviews the record to determine whether the

2

objection has merit.  The Court also excludes proposed facts that are immaterial.[1]

Finally, the Court includes some facts drawn from its own review of the record.  <u>See</u>

Fed. R. Civ. P. 56(c)(3).

### A.    <u>Organizational Structure of the Henry County Fire Department</u>

During plaintiff's employment with Henry County, William Lacy served as

Chief of the Henry County Fire Department.  (PSAF ¶ 4; R-PSAF ¶ 4.)  The Fire

Department had three divisions:  (1) Operations, (2) Training, and (3) Prevention.

(PSAF ¶ 5; R-PSAF ¶ 5.)

The Operations Division managed the County's thirteen fire stations, which

were divided further into the North Battalion and South Battalion.  (PSAF ¶ 7; R-

PSAF ¶ 7.)  James Johnson served as Division Chief of Operations.  (PSAF ¶ 6; R-

PSAF ¶ 6.)  Serving under him were six battalion chiefs–two for each of the Fire

Department's three shifts.  (PSAF ¶ 8; R-PSAF ¶ 8.)  The next lower rank was

captain, followed by station lieutenant, senior firefighter, firefighter/paramedic,

firefighter/emergency medical technician ("EMT"), and rookies/new employees.

(PSAF ¶¶ 9, 11; R-PSAF ¶¶ 9, 11.)  Seniority mattered among firefighter/paramedics

---

[1] The Court excludes as immaterial DSMF ¶ 38 and PSAF ¶¶ 2-3, 10, 13-15, 18, 21-25, 27, 29, 31-33, 35, 40-43, 45, 49-50, 59-62, 65, 69-70, 74, 78, 101-02, 104, 110, 113, 126, 137, 140, 146, 149-50, 156-60.

and firefighter/EMTs and determined the assignment of duties.  (PSAF ¶ 12; R-PSAF ¶ 12.)

### B.    Mr. Patrick's Position with the Fire Department

Henry County hired Mr. Patrick as a firefighter/EMT in September 2000. (DSMF ¶ 1; R-DSMF ¶ 1; PSAF ¶ 1; R-PSAF ¶ 1.)  In their dual capacity position, firefighter/EMTs come into contact with patients when an ambulance or fire truck is called to a scene and when people come to the station to be examined.  (PSAF ¶¶ 16-17; R-PSAF ¶¶ 16-17.)

According to Mr. Patrick, the firefighter/EMT position involved lifting greater than 100 pounds (DSMF ¶ 4; R-DSMF ¶ 4) and the following activities during a shift:  8 to 10 hours of walking, 10 to 12 hours of standing, 6 to 8 hours of sitting, 1 to 2 hours of climbing, 2 to 6 hours of bending down and forward at the waist, 4 to 6 hours of kneeling, 2 to 4 hours of bending, 2 to 4 hours of crawling, and 4 to 6 hours of grasping and/or grabbing big objects (DSMF ¶ 3; R-DSMF ¶ 3).

Additionally, the job description for a similar position (firefighter/paramedic) included the following physical demands:

> The work is dangerous and typically involves sitting, standing, walking, stooping, bending, or crouching.  Considerable physical activity is required in the lifting of light and heavy objects.  The occasional

4

climbing of ladders is required, as is the use of equipment requiring a high degree of dexterity and the ability to distinguish between shades of color.

(Patrick Dep. [61] 26-33 & Ex. 3 [61-2].)[2]

### C.  Mr. Patrick's Injury[3]

In August 2010, Mr. Patrick was exposed to meningitis while treating a patient during his shift at Station Six.  (PSAF ¶ 19.)  He subsequently suffered related symptoms and was hospitalized.  (Id. ¶¶ 20, 26.)  Upon release from the hospital, Mr. Patrick told his supervisors–Captain Nelms and Chief Sherwood–that he was exposed to meningitis while on the job.  (Id. ¶¶ 28, 44; R-PSAF ¶¶ 28, 44; see also

---

[2] The Court sustains plaintiff's objection to DSMF ¶ 2, which quotes a portion of the firefighter/EMT job description, because that document was not presented to plaintiff at his deposition.  (See R-DSMF ¶ 2.)  Instead, defendant presented plaintiff with the job description for the position of firefighter/paramedic, and he testified that the position was similar as to the duties of a firefighter.  (See Patrick Dep. 32-33.)  Accordingly, the Court includes the relevant portion of the job description produced at plaintiff's deposition in the block quotation preceding this note.

[3] Defendant objects to plaintiff's proposed facts regarding his alleged illness and related symptoms.  (R-PSAF ¶¶ 19-20, 26, 34, 36-37.)  In its Motion for Summary Judgment, however, defendant does not dispute that plaintiff suffered from a disability.  (See generally Def.'s Mot. Summ. J.)  For the reasons stated infra Part III.B.1, it is irrelevant how plaintiff contracted his illness.  Moreover, at this stage of the litigation, the evidence is viewed in the light most favorable to plaintiff as the non-movant.  Therefore, the Court overrules defendant's objections and includes information regarding plaintiff's illness in the section following this note.

5

Patrick Dep. 81; Nelms Dep. [53] 18-19.)  On September 2, 2010, he told Human Resources of his diagnosis.  (PSAF ¶ 30; R-PSAF ¶ 30.)

Mr. Patrick's symptoms recurred–"never seem[ing] to get completely better"–and, in August 2011, treatment providers diagnosed him with adhesive arachnoiditis.  (PSAF ¶¶ 34, 36; R-PSAF ¶ 34 (admitting in part).)  Mr. Patrick told Captain Nelms and Chief Sherwood of the diagnosis and was in contact with them regarding his illness because he "was in and out of work."  (Patrick Dep. 80-81.)[4] Mr. Patrick's symptoms of pain and the range of motion in his back cycled unpredictably between "bad" and "not so bad."  (PSAF ¶¶ 37-38; R-PSAF ¶¶ 37-38.) When his pain was at its worst, Mr. Patrick could not leave his bed or walk until he received a cortisone or lidocaine injection or a nerve ablation.  (PSAF ¶ 39; R-PSAF ¶ 39.)

On August 22, 2011, Mr. Patrick's colleague, Billy Pilder, accused him of taking prescription medication while on duty.  (DSMF ¶ 5; R-DSMF ¶ 5; see also

---

[4] The Court sustains defendant's objection to PSAF ¶ 46, which summarizes what plaintiff told his superiors about his illness, because that proposed fact is not supported by the record citation provided.  (R-PSAF ¶ 46.)  The Court restates the proposed fact in the sentence preceding this note to represent Mr. Patrick's deposition testimony accurately.

AO 72A
(Rev.8/82)

Patrick Dep. Ex. 5 [61-2] (Incident Report); Def.'s Ex. A [68-2] (same).)[5]  Mr.

Patrick denied taking the medication and explained as much to Captain Nelms.

(PSAF ¶ 48.)[6]  That day, Captain Nelms prepared an Investigation Report regarding

the alleged incident.  (Patrick Dep. Ex. 4 [61-2], at 7-8.)  Captain Nelms found Mr.

Pilder's accusation credible and instructed Mr. Patrick to have someone drive him

home.  (Id.; PSAF ¶ 51, first portion; R-PSAF ¶ 51, first portion.)[7]  Captain Nelms

told Mr. Patrick "to file paperwork with [Human Resources] regarding his FMLA

_____

[5] Plaintiff admits DSMF ¶ 5, but responds with an explanation of his version of events.  The Local Rules require that the non-movant's response to the statement of facts contain "concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts."  N.D. Ga. R. 56.1B.(2)a.(1).  Plaintiff's lengthy response is argumentative and violates the Local Rules.  See Walker v. United States, IRS, No. 4:07-CV-0102-HLM, 2009 WL 1241929, at *3-4 (N.D. Ga. Feb. 26, 2009) ("[P]laintiff[] must remember that a response to a statement of undisputed material facts is not an opportunity to write another brief.  If the fact stated is true, admit it.  If the fact is legitimately disputed, then say why, cite the evidence that supports the denial, and stop.") (alteration in original) (quoting Darnell v. Ga. Power Co., No. 4:04-CV-0166-HLM, slip op. at 8 (N.D. Ga. Dec. 21, 2005) (footnote omitted)).  Accordingly, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 5.

[6] The Court sustains defendant's objection to PSAF ¶ 48 as immaterial, but includes that proposed fact for background purposes.  (R-PSAF ¶ 48.)

[7] The Court sustains defendant's objections to PSAF ¶ 47 and to the second portion of ¶ 51, which contain plaintiff's version of the incident set forth in the sentences preceding this note, because those proposed facts are not supported by the record citation provided.  (R-PSAF ¶¶ 47, 51 (second portion).)

7

rights prior to returning to work." (Patrick Dep. Ex. 4, at 7-8.) Mr. Patrick subsequently requested FMLA leave (DSMF ¶ 6; R-DSMF ¶ 6[8]; see also Patrick Dep. 176[9]) and defendant granted that request (DSMF ¶ 7; R-DSMF ¶ 7).

Plaintiff complained to Chief Sherwood about being sent home by Captain Nelms and being accused of working under the influence of medication. (PSAF ¶ 52; R-PSAF ¶ 52.) In the August 22, 2011 Investigation Report, Captain Nelms noted that the accusation, although credible, had not been corroborated. (Nelms Dep. Ex. 34 [53-2]; accord PSAF ¶ 53; R-PSAF ¶ 53.) On August 30, 2011, Mr. Patrick passed a drug screen and a fit-for-duty test. (PSAF ¶ 53; R-PSAF ¶ 53.)

On August 30, 2011, a physician with Henry Occupational Medicine completed a Fit for Duty Physical Examination form regarding Mr. Patrick. (Moeller

---

[8] Plaintiff admits DSMF ¶ 6, but responds with an explanation of his version of events. For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 6.

[9] The Court sustains defendant's objection to PSAF ¶ 63, which asserts that Mr. Patrick was forced to take FMLA leave when he was able to work, because it is conclusory and not supported by the record citation provided. (R-PSAF ¶ 63.) Rather, the circumstance surrounding Mr. Patrick's August 2011 FMLA request are set forth in the paragraph preceding this note.

Dep. Ex. 42 [52-6], at 2; see also DSMF ¶ 9; R-DSMF ¶ 9; PSAF ¶ 55[10].)  The

physician requested that Mr. Patrick also get clearance from his pain management

provider, neurologist, and psychiatrist.  (Patrick Dep. 180-81; Moeller Dep. Ex. 42,

at 2.)[11]  Due to his doctors' schedules, it took plaintiff several weeks to see all of

them. (PSAF ¶ 56).[12]  A subsequent October 3, 2011 Physician's Evaluation Report

by Henry Occupational Medicine indicated that Mr. Patrick was cleared for work by

the following treatment providers:  pain management, neurologist, and psychiatrist.

(Patrick Dep. Ex. 18 [61-2], at 34; see also Moeller Dep. Ex. 42 (Fit for Duty

Physical Examination form revised to note the same); DSMF ¶ 9; R-DSMF ¶ 9;

PSAF ¶¶ 57, 64; R-PSAF ¶¶ 57, 64.)[13]  Sometime thereafter, Chief Lacy saw the Fit

_____

[10] The Court overrules defendant's materiality objection to PSAF ¶ 55 because
that proposed fact is relevant and supported by the record citation provided.  (R-
PSAF ¶ 55.)

[11] The Court sustains defendant's objections to PSAF ¶¶ 54 and 58, which
address the requirement of clearance for all doctors and plaintiff's ability to work full
duty, because those proposed facts are not supported by the record citation provided.
(R-PSAF ¶¶ 54, 58.)

[12] The Court sustains defendant's materiality objection to PSAF ¶ 56, but
includes it for background purposes.  (See R-PSAF ¶ 56.)

[13] The Court excludes DSMF ¶ 8, which states that plaintiff returned from
leave on October 6, 2011, because it does not represent the record citation accurately.
(Compare DSMF ¶ 8, with Compl. ¶ 38.)  The physician used by defendant required
plaintiff to obtain multiple medical approvals before he could return.  (See R-DSMF

for Duty Physical Examination form and learned that plaintiff had been treated for meningitis.  (Lacy Dep. [51] 20.)[14]

On October 6, 2011, plaintiff returned to work as a permanent "roving" firefighter/EMT.  (PSAF ¶¶ 64, 66; R-PSAF ¶¶ 64, 66; Patrick Dep. 91, 105.)  At his deposition, Mr. Patrick testified that his understanding of the rove position was "as a form of punishment, and . . . a form of initiation as a rookie" (Patrick Dep. 91-92),[15] and testified that he had last been assigned to such a position in 2000 when he was a rookie (id. at 101).[16]  While in the roving position, Mr. Patrick did not have a locker to store his belongings at the various stations to which he reported.  (PSAF ¶ 71; R-PSAF ¶ 71.)  In his deposition, Mr. Patrick described the roving position as inconvenient, time-consuming, and expensive because it required traveling with

_____

¶ 8.)

[14] The Court sustains defendant's objection to PSAF ¶ 82, which asserts when Chief Lacy learned of plaintiff's illness, because that proposed fact is not supported by the record citation provided.  (See R-PSAF ¶ 82.)  The Court summarizes Chief Lacy's relevant deposition testimony in the sentence preceding this note.

[15] The Court sustains defendant's objection to PSAF ¶ 68, because it is not supported by the cited evidence, and restates that proposed fact in the text preceding this note to represent the record accurately.  (R-PSAF ¶ 68.)

[16] The Court overrules defendant's objection to PSAF ¶ 73 as argumentative. (See R-PSAF ¶ 73.)

10

personal belongings and driving more in his personal vehicle, and made planning difficult because station assignment could vary from shift to shift.  (Patrick Dep. 101; see also PSAF ¶ 72 (citing Mr. Patrick's deposition)).[17]  However, he was assigned to full duty with no restrictions and his pay was not reduced.  (DSMF ¶¶ 10-11; R-DSMF ¶¶ 10-11.)

According to Captain Nelms, the Fire Department moved between twenty and thirty percent of its workforce between stations on a regular basis to cover positions. (DSMF ¶ 12[18]; Nelms Dep. 53.)  Captain Nelms testified that, while plaintiff performed the rove position, the Fire Department assigned him to overstaffed stations so that any future absences would not require staff to be moved.  (DSMF ¶ 13; Nelms Dep. 71-72.)  Likewise, the Fire Department assigned another firefighter with recurring absences due to FMLA leave to Station 13 (which could be minimally staffed).  (Nelms Dep. 71.)  In the event that someone had to rove or leave Station 13, the Fire Department rotated that role so the same person was not roving

_____

[17] The Court overrules defendant's objection to PSAF ¶ 72 as argumentative. (See R-PSAF ¶ 72.)

[18] The Court overrules plaintiff's objections to DSMF ¶¶ 12-13 because those proposed facts are supported by the record citations provided and plaintiff's objection is argumentative.  (See R-DSMF ¶¶ 12-13.)

11

repeatedly.  (Id.)[19]  Mr. Patrick, however, did not have a station assignment (PSAF ¶ 67; R-PSAF ¶ 67); instead, he called the shift supervisor who would tell him which station to report to for his next shift (Patrick Dep. 91-92).

On October 11, 2011, Captain Nelms called Mr. Patrick into his office, told Mr. Patrick that he hit the white line while driving the fire truck at Station 13, accused him of being under the influence of medications while at work, and sent him home.  (Patrick Dep. 87-88; PSAF ¶¶ 75-76.[20])  At the time, Mr. Patrick was taking Concerta (a pain medication) as needed and antibiotics, but did not take his pain medication the night before or during his shift.  (Patrick Dep. 89-90.)[21]  In late October 2011, Mr. Patrick again took FMLA leave.  (DSMF ¶ 15; R-DSMF ¶ 15.)[22]

─────────────────────

[19] The Court sustains plaintiff's objection to DSMF ¶ 14, which asserts how the Fire Department handled another firefighter who required accommodation, because the record citation does not support that proposed fact.  (See R-DSMF ¶ 14.) The Court restates that proposed fact in the sentence preceding this note to represent Captain Nelms's testimony accurately.

[20] The Court overrules defendant's objection to PSAF ¶¶ 75-76 as argumentative.  (See R-PSAF ¶¶ 75-76.)

[21] The Court sustains defendant's objection to PSAF ¶ 77 because it is not supported by the record citation.  The Court restates that proposed fact in the text preceding this note to represent plaintiff's deposition testimony accurately.  (See R-PSAF ¶ 77.)

[22] Plaintiff admits DSMF ¶ 15, but responds with an explanation of his version of events.  For the reasons set forth supra note 5, the Court accepts plaintiff's

12

**D.**   **The EEOC Charge**

On November 2, 2011, Mr. Patrick filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (DSMF ¶ 16; R-DSMF ¶ 16; PSAF ¶ 81; R-PSAF ¶ 81.)  On that date, plaintiff's counsel had the Charge hand delivered to the Fire Department along with an explanatory letter.  (DSMF ¶ 17; R-DSMF ¶ 17.)  Around that time, Chief Lacy became aware that plaintiff filed the Charge (DSMF ¶ 18; R-DSMF ¶ 18), and was also aware that he had used FMLA leave (PSAF ¶ 83; R-PSAF ¶ 83).

**E.**   **Mr. Patrick's Return to Work**

According to Chief Lacy, an employee's "return to light duty would be based on the employee's ability to come to work with . . . a form that releases them to light duty and states the limitations." (Lacy Dep. 42.)[23]  Chief Lacy had ultimate authority over light duty personnel, with his three subordinate chiefs (Brad Johnson, Joe Kelly,

---

admission and does not include the remaining statements in R-DSMF ¶ 15. Additionally, the Court sustains defendant's objection to PSAF ¶¶ 79-80, which concern plaintiff's October 2011 FMLA leave, because those proposed facts are not supported by the record citation provided.  (R-PSAF ¶¶ 79-80.)

[23] The Court sustains defendant's objection to PSAF ¶ 88 and restates that proposed fact in the sentence preceding this note to reflect Chief Lacy's deposition testimony accurately.  (See R-PSAF ¶ 88.)

13

and Ike McConnell) sharing supervisory responsibility.  (Johnson Dep. 88-89; Lacy Dep. 15, 47-48.)[24]  For example, Chief Johnson had supervisory authority over the Fire Department's thirteen stations, with direct supervision over the battalion chiefs and indirect supervision of other employees (including plaintiff).  (Johnson Dep. 14-15, 24, 27-28, 31-32, 38-39, 85.)

On November 30, 2011, Mr. Patrick's  pain management physician released him to work light duty for sixty days with the following restrictions:  no lifting greater than twenty pounds, and no pushing, pulling, or bending.  (DSMF ¶ 19; R-DSMF ¶ 19;  PSAF ¶ 84; R-PSAF ¶ 84;  see also Def.'s Ex. K [68-2].)   In his deposition, Chief Johnson did not recall having input into decisions regarding plaintiff's light duty, but did remember assigning him to a position answering the phone.  (Johnson Dep. 85-88; PSAF ¶ 90.)[25]  Chief Lacy was under the impression

---

[24] The Court sustains defendant's objection to PSAF ¶ 89 and restates that proposed fact in the sentence preceding this note to reflect Chief Lacy and Chief Johnson's deposition testimony accurately.  (See R-PSAF ¶ 89.)

[25] The Court sustains defendant's objection to PSAF ¶ 87 and restates that proposed fact in the sentence preceding this note to reflect Chief Johnson's deposition testimony accurately.  (See R-PSAF ¶ 87.)  However, the Court overrules defendant's objection to PSAF ¶ 90 because that proposed fact is supported by the record citation provided.  (See R-PSAF ¶ 90.)

14

that plaintiff's doctor likely would release Mr. Patrick from light duty at the end of the sixty-day period.  (Lacy Dep. 49.)

In December 2011, Chief Lacy assigned plaintiff to a temporary light duty position at the Fire Department headquarters and  Mr. Patrick returned to work on December 13 or 14.  (DSMF ¶¶ 20-21; R-DSMF ¶¶ 20-21[26]; PSAF ¶ 85; R-PSAF ¶ 85; Patrick Dep. 109-10 (stating he returned to work around December 13).)  He worked Monday through Thursday from 8:00 a.m. to 5:00 p.m.  (PSAF ¶ 85; R-PSAF ¶ 85.)

On December 19, 2011, plaintiff signed an Acknowledgment and Agreement form (the "Agreement") stating that the County offered him a "temporary light duty job" within the Fire Department and that the position was not to exceed six months, with an evaluation of his performance and need for the position every thirty days.  (PSAF ¶¶ 86, 92; R-PSAF ¶¶ 86, 92; Johnson Dep. Ex. 67 [50-1] (Agreement).)  The Agreement also stated that, if plaintiff's doctor released him to regular duty status before the six-month period ended, he would return to his regular job duties.  (Johnson Dep. Ex. 67.)

---

[26]  The Court overrules plaintiff's partial denial of DSMF ¶ 21 as argumentative.  (See R-DSMF ¶ 21.)

15

According to Chief Lacy, in January 2012, the Fire Department changed its light duty policy, such that light duty assignments would be available only to employees injured on the job.  (PSAF ¶ 155; R-PSAF ¶ 155; see also Lacy Dep. 65-66; Moeller Dep. 43-44.)[27]  In his deposition, Chief Lacy testified that there was never a written policy on light duty assignments for employees who were not injured on the job, but simply a "practice."  (Lacy Dep. 74-75; see also Moeller Dep. 43-44 (policy differed by department).)[28]

On February 1, 2012, Mr. Patrick worked in the light duty office with two other light duty personnel–Doug Clark[29] and David Ritchie.  (PSAF ¶ 91; R-PSAF ¶ 91).  Sometime in January or February of 2012, Mr. Clark told plaintiff that he overheard a conversation between Division Chief of Operations Johnson and his

---

[27] The Court sustains defendant's objection to the wording of PSAF ¶ 95 and restates that proposed fact to represent the record citations accurately.  (R-PSAF ¶ 95.)

[28] The Court overrules defendant's objection to PSAF ¶ 96 as argumentative, but restates that proposed fact in the sentence preceding this note to reflect the record citations accurately.  (R-PSAF ¶ 96.)

[29] Mr. Clark worked as a firefighter/paramedic with the Fire Department at the time and began light duty in 2009 after a job-related injury.  (Clark Decl. [56-6] ¶¶ 1, 3.)  He remained in a light duty position for two years.  (Id. ¶ 4.)  Additionally, the County permitted Mr. Clark to continue working even though his doctor had prescribed him pain medication.  (Id. ¶ 19.)

16

assistant, Donna Burkhart.  (PSAF ¶¶ 97-98; R-PSAF ¶¶ 97-98.)[30]  According to Mr.

Clark, Ms. Burkhart had suggested to Chief Johnson that Mr. Patrick work in a light

duty position as a receptionist answering telephones.  Chief Johnson reportedly

responded, "[F]— Joe Patrick since he filed a lawsuit against the department I ain't

doing s— for him."  (PSAF ¶¶ 99-100; R-PSAF ¶¶ 99-100.)

On February 9, 2012, Chief Lacy instructed Mr. Patrick to report to him upon

arrival each morning for the duration of the light duty assignment.  (PSAF ¶ 93; R-

PSAF ¶ 93.)  Chief Lacy also instructed Mr. Patrick to report to David Ritchie in the

light duty office for instructions and tasks when he was unavailable.  (PSAF ¶ 94.)[31]

On February 10, 2012, the Fire Department responded to a large warehouse

fire, which extended to a twenty-four hour event.  (DSMF ¶¶ 22-23; R-DSMF ¶¶ 22-

23.)  Captain Dees (acting battalion chief at Station 1) ordered Messrs. Patrick and

Ritchie to assist with the fire.  (PSAF ¶¶ 103, 105.)  Mr. Ritchie responded that the

---

[30] The Court overrules defendant's partial objections to PSAF ¶¶ 97-100 as
argumentative, and because the hearsay statement contained therein may be reduced
to admissible evidence at trial.  See Macuba v. Deboer, 193 F.3d 1316, 1323 (11th
Cir. 1999) (holding that, in summary judgment context, court may consider hearsay
where the statement could be reduced to admissible evidence at trial).

[31] The Court overrules defendant's objection to PSAF ¶ 94 as argumentative,
and because that proposed fact is supported by the record citation provided.  (R-
PSAF ¶ 94.)

17

men were on light duty[32]; Captain Dees responded that the orders were from Chief Lacy and all resources were needed because it was a fire emergency.  (Id. ¶¶ 106-09.)[33]  Messrs. Patrick and Ritchie followed orders (confirmed by Chief Lacy at the scene) to assist with the fire, including filling and loading air tanks weighing two to thirty pounds, assisting with tools and gear, and rolling fire hoses weighing between fifty and seventy-five pounds.  (Id. ¶¶ 112, 114-21; see also Patrick Dep. 130-31.)[34] Mr. Patrick's superiors knew he was in pain; nevertheless, they directed him to continue.  (PSAF ¶ 123; Patrick Dep. 131.)[35]  At some point during the afternoon,

---

[32] The Court sustains defendant's objection to PSAF ¶ 124, which asserts that plaintiff had a light duty medical restriction on February 10, 2012, because that proposed fact is not supported by the record citation provided.  (R-PSAF ¶ 124.)

[33] The Court overrules defendant's objections to PSAF ¶¶ 103, 105-09 as argumentative.  (See R-PSAF ¶¶ 103, 105-09.)

[34] The Court overrules defendant's objections to PSAF ¶¶ 112, 114-21 as argumentative.  (See R-PSAF ¶¶ 112, 114-21.)

[35] The Court sustains in part defendant's objection to PSAF ¶ 122 because the first portion of that proposed fact is not supported in full by the record citation provided.  (R-PSAF ¶ 122.)  The Court overrules defendant's objection to the remaining portion of PSAF ¶ 122 and to PSAF ¶ 123 as argumentative.  (R-PSAF ¶¶ 122-23.)

18

Mr. Patrick slipped on a hill at the fire scene and injured his right foot.  (PSAF ¶ 125.)[36]

On February 10, 2012, Chief Lacy wrote plaintiff a letter stating that his sixty-day light duty assignment would end on February 15, and requiring Mr. Patrick to present a medical clearance form signed by his physician releasing him to full duty without restrictions by that date.  (DSMF ¶ 25; R-DSMF ¶ 25.)[37]  Although he did not recall discussing the letter with Chief Lacy, Mr. Patrick received the letter "within a day or two" of February 15.  (Patrick Dep. 116; see also PSAF ¶ 130.)[38]

Likewise, plaintiff received the following memorandum from Chief Lacy, dated February 10, 2012, via the mail:

> As we discussed this past week, you have reached the end of your 60 day light duty assignment.  In order for you to return to duty, you must have your physician complete and sign the Henry County Fire Department Medical Clearance Return to Work form stating that you

---

[36] The Court overrules defendant's objection to PSAF ¶ 125 as argumentative, and because the relevant portion of that proposed fact is supported by the record citation provided.  (R-PSAF ¶ 125.)

[37] Plaintiff admits DSMF ¶ 25, but responds with his version of events.  For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 25.

[38] The Court overrules defendant's objection to PSAF ¶ 130 because defendant has not refuted that fact.  (R-PSAF ¶ 130.)

19

> are released to return to full duty without any restrictions.  I will expect that you will submit this form to me no later than Wednesday, February 15, 2012 as that is the date when your current light duty assignment expires.

 (PSAF ¶ 128; R-PSAF ¶ 128; Patrick Dep. Ex. 11 [61-2] (Feb. 10, 2012 letter), at 23.)[39]

On February 13, 2012, Mr. Patrick's physician submitted paperwork to the Fire Department stating that plaintiff remained under his care and extending Mr. Patrick's need for light duty by thirty days.  (DSMF ¶ 24; R-DSMF ¶ 24; PSAF ¶ 132; R-PSAF ¶ 132; see also Def.'s Ex. L [68-2].)  In his deposition, Chief Lacy did not recall seeing that document.  (PSAF ¶ 139.)[40]

On February 13 or 14, 2012, Chief Lacy called Mr. Patrick into his office and told him that there was no longer a light duty position available.[41]  (PSAF ¶ 127; R-

---

[39] Defendant objects to PSAF ¶¶ 129 and 131, which summarizes and compares the terms of the Agreement with Chief Lacy's February 10, 2012 letter, and asserts that the documents are the best evidence of their content.  (R-PSAF ¶¶ 129, 131.)  The Court sustains those objections and includes the relevant text in the block quotation preceding this note.

[40] The Court overrules defendant's objection to PSAF ¶ 139 as argumentative. (R-PSAF ¶ 139.)

[41] The Court sustains defendant's objection to PSAF ¶ 136, which asserts that plaintiff's light duty medical restriction did not end on February 14, 2012, and summarizes the terms of the Agreement, because the first portion of that proposed

PSAF ¶ 127.)[42]  There were, however, open light duty positions.  (PSAF ¶¶ 135,

153.)[43]  For example, Chief Lacy hired someone outside the Fire Department to fill

the receptionist position which plaintiff had been performing.  (Id. ¶ 154; see also

Johnson Dep. 103-05 (Chief Lacy made the decision to hire a person to fill the

vacant receptionist position).)[44]  Likewise, during plaintiff's employment with the

Fire Department, firefighter/EMT Clint Hodges had a non-work related injury and

received a permanent light duty clerical position to accommodate his work

restrictions.  (Patrick Dep. [61] 144-45; Johnson Dep. [50] 56-57.)  Mr. Hodges still

occupied a light duty position when defendant terminated plaintiff.  (Patrick Dep.

145.)

---

fact is not supported by the record citation provided and the relevant terms of the
Agreement are set forth supra Part I.E.

[42] The Court sustains defendant's objection to PSAF ¶ 134 and restates that
proposed fact in the sentence preceding this note to represent the record citation
accurately.  (R-PSAF ¶ 134.)

[43] The Court sustains defendant's objection to the second portion of PSAF ¶
135, which asserts that Mr. Patrick was available to work after February 15, 2012,
given his request for FMLA leave.  (R-PSAF ¶ 135.)  The Court overrules
defendant's objections to the remainder of PSAF ¶ 135 and ¶ 153 as argumentative.

[44] The Court overrules defendant's objection to PSAF ¶ 154 as argumentative.
(R-PSAF ¶ 154.)

On February 14, 2012, Mr. Patrick submitted a request for FMLA leave beginning on February 16. (DSMF ¶ 26[45]; Def.'s Exs. C & C-1 [68-2]). Mr. Patrick's doctor submitted a FMLA certification in support of that request (DSMF ¶ 27),[46] stating that Mr. Patrick was on light duty restrictions (Def.'s Ex. D [68-2]). Mr. Patrick reported to light duty on February 16, 2012, but Chief Lacy told plaintiff that there was no light duty assignment available for him. (PSAF ¶ 133; R-PSAF ¶ 133; see also Lacy Dep. [51] 70 & Ex. 78 [51-3] (Feb. 16, 2012 letter).)[47]

On February 28, 2012, Henry County granted Mr. Patrick's FMLA leave request retroactive to February 16, 2012, with his twelve weeks of leave expiring on May 10. (DSMF ¶¶ 28-29; R-DSMF ¶¶ 28-29.)[48]  On February 28, defendant's

---

[45] Plaintiff admits DSMF ¶ 26, but responds with additional facts. (R-DSMF ¶ 26.) For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 26.

[46] Plaintiff admits DSMF ¶ 27, but responds with additional facts. (R-DSMF ¶ 27.) For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 27.

[47] The Court sustains defendant's objections to PSAF ¶¶ 138, 147, 151, which assert that Mr. Patrick was forced to take FMLA leave when he was able to work, because they are conclusory and not supported by the record citation provided. (R-PSAF ¶¶ 138, 147, 151.) The circumstances surrounding Mr. Patrick's February 2012 FMLA request are set forth in the paragraph preceding this note.

[48] The parties agree that Henry County approved all of plaintiff's FMLA requests. (DSMF ¶ 40; R-DSMF ¶ 40 (the Court excludes plaintiff's additional

Human Resources Administrator, Cathy Moeller, mailed Mr. Patrick a FMLA Designation Notice confirming that his FMLA leave was approved through May 10, 2012. (Def.'s Ex. E [68-2].)[49] The Notice stated that a fitness-for-duty certificate would be required before Mr. Patrick's employment would be restored. (Id.) In his deposition, Mr. Patrick did not recall receiving that form. (Pl.'s Decl. [56-3] ¶ 17.)

On May 1, 2012, Ms. Moeller sent plaintiff a letter informing him that his FMLA leave period concluded on May 10. (DSMF ¶ 31; R-DSMF ¶ 31[50]; PSAF ¶ 142; R-PSAF ¶ 142.) On May 10, Mr. Patrick's physician submitted a Fitness-for-Duty Certification to the Fire Department, stating that plaintiff was restricted to light duty. (Moeller Dep. Ex. 86 [52-6], at 19-21.)[51] Mr. Patrick emailed Chief Lacy and

statements for reason set forth supra note 5).)

[49] Plaintiff denies DSMF ¶ 30 because he does not recall receiving the FMLA form. (R-DSMF ¶ 30.) However, a notation on the form by Ms. Moeller indicates that she mailed it to Mr. Patrick. (Def.'s Ex. E.) Accordingly, the Court restates that proposed fact in the text preceding this note to address plaintiff's objection.

[50] Plaintiff admits DSMF ¶ 31, but responds with additional facts. (R-DSMF ¶ 31.) For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶ 31.

[51] The parties submitted three proposed facts stating that Mr. Patrick's physician submitted a form to the Fire Department on May 10, 2012. (DSMF ¶¶ 32-33; PSAF ¶ 143.) Rather than addressing the parties' objections to their similar proposed facts (see R-DSMF ¶¶ 32-33; R-PSAF ¶ 143), the Court relies on the actual record evidence in the sentence preceding this note.

23

contacted Ms. Moeller stating that he could work light duty.  (PSAF ¶¶ 144-45, 152.)[52]

### F.    Mr. Patrick's Termination

On May 14, 2012, Chief Lacy mailed plaintiff a termination letter stating as follows:

> As you know from corresponding with the Human Resources Department, your FMLA leave has expired.  I have spoke with Human Resources and have been advised that you remain medically unable to return to full duty as a Firefighter/EMT.  I informed you on February 13 and again on February 16 that Henry County Fire Department (HCFD) no longer had any light duty assignment for you and furthermore, I instructed you that as of January 2012, HCFD no longer provides light duty to personnel who are not recovering from on the job injuries.
>
> Therefore this letter shall serve to inform you that your employment with Henry County Fire Department is hereby terminated.  Please make an appointment with Chief Johnson to return all property and materials issued to you and also with the Human Resources Department to finalize related paperwork.

(PSAF ¶ 148; R-PSAF ¶ 148; Def.'s Ex. O [68-2], at 34.)[53]

---

[52] The Court overrules defendant's objections to PSAF ¶¶ 144-45, 152 as argumentative.  (R-PSAF ¶¶ 144-45, 152.)

[53] Instead of addressing the parties' proposed fact and response about the May 14, 2012 termination letter (see DSMF ¶ 34; R-DSMF ¶ 34), the Court includes the text of the letter in the block quotation preceding this note.

24

In his deposition, Mr. Patrick testified that, as of May 14, 2012, he could not perform most of the physical demands of the firefighter/EMT position.  (DSMF ¶¶ 35-36; R-DSMF ¶¶ 35-36; Patrick Dep. 154-55.)  The only firefighter duties that Mr. Patrick could have performed were clerical.  (DSMF ¶ 37; R-DSMF ¶ 37.)  Additionally, from the time of his termination through his April 4, 2014 deposition, Mr. Patrick was not physically able to perform as a firefighter/EMT.  (DSMF ¶ 39; R-DSMF ¶ 39.)[54]

## II.    SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Those materials

---

[54] Plaintiff admits DSMF ¶¶ 35-37, 39, but responds with additional facts.  (R-DSMF ¶¶ 35-37, 39.)  For the reasons set forth supra note 5, the Court accepts plaintiff's admission and does not include the remaining statements in R-DSMF ¶¶ 35-37, 39.

may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to

26

be tried. <u>Anderson</u>, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. <u>Id.</u> at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. <u>Id.</u> Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> For factual issues to be "genuine," they must have a real basis in the record. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." <u>Id.</u> at 587.

III.   **<u>ANALYSIS</u>**

Mr. Patrick alleges the following claims against the County: interference with FMLA rights (Count I); retaliation for using FMLA leave (Count II); discrimination because of a disability in violation of the ADA (Count III); failure to accommodate in violation of the ADA (Count IV); and retaliation for filing an EEOC Charge and requesting accommodation under the ADA (Count V). The Court addresses these claims in turn below.

AO 72A
(Rev.8/82)

### A.     FMLA Claims

The FMLA entitles an eligible employee to take up to 12 weeks of leave in a 12-month period for the birth or adoption of a child, or the serious health condition of the employee or the employee's child, spouse, or parent.  29 U.S.C. § 2612(a)(1). To protect this right, the FMLA prohibits an employer from interfering with an employee's attempt to take leave or from retaliating against an employee for opposing practices made unlawful under the FMLA.  Id. § 2615. Plaintiff alleges that defendant both interfered with his rights under the FMLA (Compl. ¶¶ 84-90) and retaliated against him upon his return (id. ¶¶ 91-97).

### 1.     Count I:  Interference with FMLA Rights

Defendant asserts that plaintiff's FMLA interference claim fails because Mr. Patrick repeatedly sought and was granted FMLA leave, and defendant terminated him only after his leave had expired and he could not produce a fitness-for-duty certification to return to his position as a firefighter/EMT. (Def.'s Br. [43-1] 2-6, 23; see also Def.'s Reply [66] 19.)  In his response brief, plaintiff clarifies his FMLA interference claim, explaining that "[d]efendant interfered with Patrick's FMLA rights when it did not return him to the 'position of employment held by [him] when the leave commenced,' i.e., the light duty position." (Pl.'s Resp. [56] 29-30 (quoting

28

<u>Turner v. Fla. Prepaid Coll. Bd.</u>, 522 F. App'x 829, 834-35 (11th Cir. 2013) (per curiam)).)

An interference claim arises where an employee is denied a benefit to which he is entitled under the FMLA.  <u>Martin v. Brevard Cnty. Pub. Sch.</u>, 543 F.3d 1261, 1266-67 (11th Cir. 2008) (per curiam) (citing 29 U.S.C. § 2615(a)(2)).  Following FMLA leave, "[a]n employee has the right . . . 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." <u>Martin</u>, 543 F.3d at 1267 (quoting 29 U.S.C. § 2614(a)(1)(A)).

"To state a claim of interference with a substantive right [under the FMLA], an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." <u>Strickland v. Water Works & Sewer Bd.</u>, 239 F.3d 1199, 1206-07 (11th Cir. 2001).  "An employee need not 'allege that his employer intended to deny the right; the employer's motives are irrelevant.'" <u>Martin</u>, 543 F.3d at 1267 (quoting <u>Strickland</u>, 239 F.3d at 1208).  However, employers can assert lack of causation as an affirmative defense.  <u>Spakes v. Broward Cnty. Sheriff's Office</u>, 631 F.3d 1307, 1309 (11th Cir. 2011) (per curiam).  By raising this defense, an employer may properly deny reinstatement "if it can demonstrate that it would have

29

discharged the employee had he not been on FMLA leave." <u>Strickland</u>, 239 F.3d at 1208.

It is undisputed that defendant terminated plaintiff rather than return him to the light duty position he occupied immediately before taking FMLA leave, that plaintiff was able to perform that job, and that there were vacant light duty positions. For the reasons set forth <u>infra</u> Part III.B.1, transferring Mr. Patrick to the open light duty position was a reasonable accommodation.  Moreover, it is not clear that defendant would have terminated plaintiff had he not repeatedly taken FMLA leave because it continued to employee another non-occupationally injured employee (Mr. Hodges) in a light duty position.

Therefore, viewing the facts in the light most favorable to plaintiff as the non-movant, a jury could find that defendant violated Mr. Patrick's right under § 2614(a)(1)(A) of the FMLA to be reinstated to the light duty position he held when his FMLA leave commenced.  Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED** as to Mr. Patrick's FMLA interference claim (Count I).

AO 72A
(Rev.8/82)

### 2.    <u>Count II:  Retaliation for Using FMLA Leave</u>

Count II of the Complaint claims that defendant terminated plaintiff in retaliation for exercising his right to FMLA leave.  (Comp. ¶ 93.)  Defendant argues that there is no direct evidence of retaliation for plaintiff's use of FMLA leave and that it had a legitimate reason for terminating plaintiff–his inability to produce a fitness-for-duty certification stating that he could work as a firefighter/EMT.  (Def.'s Br. 7; Def.'s Reply 16, 18.)  Plaintiff contends that Division Chief of Operations Johnson's explicit comment stating that he refused to assign Mr. Patrick to an open receptionist position because of his EEOC Charge is direct evidence of retaliation.  (Pl.'s Resp. 5-7.)  Alternatively, Mr. Patrick argues that he has stated a retaliation claim because Chief Lacy was aware of his FMLA leave and terminated him immediately upon his return to work under the pretext that a light duty position was not available.  (<u>Id.</u> at 19-22, 27-28.)[55]

---

[55] In his response brief, plaintiff claims that defendant also retaliated against him for his October 2011 FMLA leave by assigning him to the rove position and failing to place him in the open receptionist position.  (Pl.'s Resp. 3, 5, 7, 18-20, 23-27 (combining ADA and FMLA arguments).)  The Court need not address those alleged adverse actions regarding plaintiff's FMLA retaliation claim because he may not amend the Complaint via a response brief.  <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Moreover, for the reasons set forth <u>infra</u> this Part and Part III.B.1, assigning plaintiff to the rove

AO 72A
(Rev.8/82)

To prove retaliation in violation of the FMLA, a plaintiff "must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207. "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" Id. (quoting King v. Preferred Technical Grp., 166 F.3d 887, 891 (7th Cir. 1999)).

In the absence of direct evidence [56] of the employer's intent, courts in FMLA cases apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII cases. See Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000). To survive summary judgment, a plaintiff must raise a triable issue over whether (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment

---

position was not an adverse action, and there is no evidence that plaintiff sought the receptionist position or that Chief Johnson's negative statement regarding plaintiff occupying that position can be imputed to Chief Lacy, who was the decision maker.

[56] Direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).

decision; and (3) the decision was causally related to the protected activity.  Parris

v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000).

If the plaintiff establishes this three-part prima facie case, the burden shifts to

the employer to articulate a legitimate, non-retaliatory reason for the adverse action.

Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).

This burden is "exceedingly light."  Holifield v. Reno, 115 F.3d 1555, 1564 (11th

Cir. 1997) (per curiam). To survive summary judgment, the plaintiff must then

"'come forward with evidence, including the previously produced evidence

establishing the prima facie case, sufficient to permit a reasonable factfinder to

conclude that the reasons given by the employer were not the real reasons for the

adverse employment decision.'"  Chapman v. AI Transport, 229 F.3d 1012, 1024

(11th Cir. 2000) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th

Cir. 1997)).[57]

---

[57] To show that the employer's reasons were pretextual, the plaintiff must
demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons for its action that a
reasonable factfinder could find them unworthy of credence."  Combs, 106 F.3d at
1538 (quotation marks and citation omitted).  "If the plaintiff does not proffer
sufficient evidence to create a genuine issue of material fact regarding whether each
of the defendant employer's articulated reasons is pretextual, the employer is entitled
to summary judgment on the plaintiff's claim."  Chapman, 229 F.3d at 1024-25.
Despite this burden-shifting, the "ultimate burden of persuading the trier of fact that

Because it is undisputed that Chief Johnson was not involved in the decision to terminate plaintiff, his statement is not direct evidence in support of Mr. Patrick's FMLA retaliation claim. See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1329-30 (11th Cir. 1998) (holding that statements made by non-decision maker are not direct evidence of discriminatory intent).

However, plaintiff can establish a prima facie claim under the McDonnell Douglas framework given the close temporal proximity of his protected February 2012 FMLA leave, its expiration on May 10, and his termination by Chief Lacy on May 14. See Schaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010) (stating that causation can be reasonably inferred from close temporal proximity between the protected action and the adverse employment action). Thus, the burden shifts to defendant, which has articulated a legitimate, non-retaliatory reason for the termination–failure to furnish a fitness-for-duty certification that plaintiff could perform the duties of a firefighter/EMT.

In his response, Mr. Patrick has adduced sufficient evidence for a jury to find that reason to be a pretext for FMLA retaliation. Chief Lacy's stated reason for

the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

34

plaintiff's termination was a policy change in the provision of light duty positions for employees not injured on the job.  However, the Fire Department permitted another firefighter/EMT (Mr. Hodges) to work in a light duty position after he suffered a non-occupational injury.  Additionally, for the reasons set forth <u>infra</u> Part III.B.1, transferring plaintiff to a light duty position was a reasonable accommodation and such positions were available.

Therefore, the undersigned **REPORTS** that a reasonable jury could find that defendant intentionally retaliated against Mr. Patrick for taking FMLA leave when Chief Lacy terminated him four days after he returned to work.  Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED** as to Mr. Patrick's FMLA retaliation claim (Count II).

## B.     <u>ADA Claims</u>

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Under the ADA "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that

35

the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" Id. § 12112(b)(5)(A).  The ADA also protects an employee from retaliation for opposing unlawful conduct and for participating in a process to enforce his rights.  The "opposition clause" prohibits discrimination because the employee "opposed any act or practice made unlawful by [the ADA]" and the "participation clause" prohibits the same where the employee "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing" for seeking to enforce their rights under the ADA.  Id. § 12203(a).

Mr. Patrick contends that, rather than accommodate his disability (adhesive arachnoiditis), defendant assigned him to the rove position and eventually terminated him.  (Compl. ¶¶ 98-119.)  Mr. Patrick alleges that defendant's actions constitute disparate treatment (Count III), failure to provide a reasonable accommodation (Count IV), and retaliation (Count V) in violation of the ADA.  The Court addresses each claim in turn.

36

### 1.    Count III:  Disability Discrimination

Count III of the Complaint alleges that, upon learning of Mr. Patrick's disability, defendant treated him adversely by assigning him to the rove position and later terminating him.  (Compl. ¶ 103.)[58]  Defendant contends that Mr. Patrick was not a qualified individual because he could not perform the essential functions of the firefighter/EMT job, and that the only adverse action he suffered was a legitimate termination based on his inability to return to full duty.  (Def.'s Br. 11-15; Def.'s Reply 7-14.)  Plaintiff responds that he could have worked with the accommodation of a transfer to a light duty or receptionist position and, thus, he was a qualified individual.  (Pl.'s Resp. 7-9.)  Mr. Patrick also contends that the rove position was used as punishment and was an adverse employment action.  (Id. at 9-10.)

Without direct evidence, an ADA discrimination claim employs the McDonnell Douglas burden-shifting analysis.  See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).  A plaintiff may establish a prima facie

---

[58] In his response, Mr. Patrick alleges that defendant took additional adverse actions, including falsely accusing him of taking medications at work, forcing him to take FMLA leave, and forcing him to work outside of his light duty position. (Pl.'s Resp. 9.) However, as discussed supra note 54, Mr. Patrick cannot amend the Complaint via a response brief.  Accordingly, the Court need only consider the adverse actions alleged in Count III of the Complaint.

case of disparate treatment by showing that he (1) is disabled; (2) is a qualified individual; and (3) was subjected to an adverse action because of his disability.[59] Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam).   That then raises an inference of discrimination, causing the burden of production to shift to the defendant to rebut that inference by articulating a legitimate, non-discriminatory reason for its action.   Holifield, 115 F.3d at 1564.

If the defendant successfully rebuts the plaintiff's prima facie case, "the presumption of discrimination is eliminated."   Chapman, 229 F.3d at 1024.   The plaintiff must then show that the employer's proffered reasons were pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.   Martin, 543 F.3d at 1268.

Defendant does not contest plaintiff's allegation that he was disabled by his adhesive arachnoiditis; thus, the Court focuses on the remaining two elements.   With regard to element two, a "qualified individual" is one who, "with or without

---

[59] In Brandon v. Lockheed Martin Aeronautical Systems, 393 F. Supp. 2d 1341, 1345-46 (N.D. Ga. 2005), this Court held that the third element of the prima facie case should require a plaintiff to show only that he was subjected to an adverse employment action under circumstances suggesting a causal link to his disability. The Court addresses this third prima facie element in more detail infra.

38

reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). As examples of reasonable accommodations, the ADA lists "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." Id. § 12111(9)(B); see 29 C.F.R. § 1630.2(o)(2)(ii). As the list indicates, the ADA may require the employer to reassign or transfer the employee to a vacant position as a reasonable accommodation, but the employer does not have to remove another employee from a position to do so, or promote a disabled employee. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001). Additionally, the employee has the burden of identifying a reasonable accommodation that would allow him to perform the essential functions of his job. Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam).

Here, regardless of whether Mr. Patrick applied for the open receptionist position, he repeatedly sought a light duty assignment before his termination,[60] and

---

[60] While the Eleventh Circuit has not determined precisely what form a request for accommodation must take, it has cited the Seventh Circuit for the proposition that: "'A request as straightforward as asking for continued employment is a sufficient request for accommodation.'" Holly v. Clarison Indus., L.L.C., 492 F.3d 1247, 1261 n.14 (11th Cir. 2007) (quoting Hendricks-Robinson v. Excel Corp., 154

it is undisputed that there were available light duty positions for which he could perform the essential functions.  The EEOC advises that, even where an employer reserves light duty positions for employees with occupational injuries, the ADA requires the employer to reassign non-occupationally injured employees to any vacant reserved positions as a reasonable accommodation.  See EEOC Enforcement Guidance: Workers Compensation and the ADA, No. 915.002, 1996 WL 33161338, at *13 (Sept. 3, 1996).  That interpretation is entitled to deference.  See Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010) (explaining that, "although administrative interpretations of an Act by its enforcing agency are not controlling, they do constitute a body of experience and informed judgment to which [we] . . . may properly resort for guidance" (internal quotation marks and citation omitted)).  Therefore, regardless of how Mr. Patrick acquired his adhesive arachnoiditis, a reasonable jury could find that he was a qualified individual at the time of termination because, viewing the facts in the light most favorable to plaintiff, placing him in an available light duty position would have been a reasonable accommodation.

---

F.3d 685, 694 (7th Cir. 1998)).  Thus, the Court considers plaintiff's repeated attempts to report for light duty and his submission of a physician's certification that he could perform such work to be a request for light duty accommodation.

With regard to element three, an employment action is adverse "only if it results in some tangible, negative effect on the plaintiff's employment." Lucas, 257 F.3d at 1261; see also Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998) ("Any adversity must be material; it is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities."). The question of whether an action is adverse is objective, such that "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." Doe, 145 F.3d at 1449. "An action is not adverse simply because the plaintiff dislikes it or disagrees with it." Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 895 (11th Cir. 2014) (per curiam). For example, the subjective preference of one position over another generally is not relevant to that determination. Id.

Plaintiff's assignment to the rove position did not have a materially adverse effect on his employment. Courts have repeatedly held that a change of duty station resulting in an increased commute, without more, is not objectively serious and tangible enough to meet the threshold of substantiality. See Rossi v. Fulton Cnty., Ga., No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213140, at *13 (N.D. Ga. Jan. 28, 2013) (collecting cases finding that increase commute was not adverse employment

41

action), report & recommendation adopted, 2013 WL 1213139, at *3 (Mar. 22, 2013); see also Doe, 145 F.3d at 1452 (explaining that transfers that result in lesser pay, responsibilities, or prestige may be adverse). Although changing station assignments was inconvenient, Mr. Patrick remained a full duty firefighter/EMT with the same pay and responsibilities. Moreover, the Fire Department moved at least twenty percent of its workforce between stations on a regular basis. Thus, while Mr. Patrick considered the rove position as less prestigious, it was not objectively so, as he shared the company of many of his colleagues who also changed stations routinely. However, since Mr. Patrick's termination clearly constitutes an adverse employment action, he can establish a prima facie case of disability discrimination and the undersigned proceeds with the burden-shifting analysis.

As discussed supra Part III.A.2, defendant has articulated a legitimate non-discriminatory reason for terminating plaintiff–his inability to furnish a fitness-for-duty certification for the firefighter/EMT position. But, Mr. Patrick has presented sufficient evidence for a jury to find that reason to be a pretext. The undisputed evidence is that there were available light duty positions at the time of plaintiff's termination and defendant employed another firefighter/EMT who suffered a non-occupational injury in a light duty position.

The undersigned **REPORTS** that Mr. Patrick has presented sufficient evidence for a reasonable jury to find that defendant intentionally discriminated against him based on his disability. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Mr. Patrick's ADA discrimination claim be **GRANTED** regarding his transfer to the rove position but **DENIED** regarding his termination, and that he be permitted to proceed on part of Count III.

### 2.    Count IV:  Failure to Accommodate

Count IV of the Complaint alleges that defendant failed to accommodate plaintiff by forcing him to work a fire scene and by not permitting him to work in an available light duty position. (Compl. ¶¶ 113-14.) Defendant argues that plaintiff's light duty work restrictions were not in place during the February 10, 2014 fire, that the fire was an exigent circumstance, that the Fire Department provided Mr. Patrick with a temporary light duty assignment when he was not on FMLA leave, and that, regardless, plaintiff was not a qualified individual protected by the ADA. (Def.'s Br. 15-19; Def.'s Reply 6-8.) Plaintiff responds that defendant's failure to accommodate his light duty restrictions during the fire scene was an adverse employment action,

43

and that defendant failed to accommodate him with placement in a light duty position.  (Pl.'s Resp. 7-8, 11-12, 16-17.)

In contrast to a disparate treatment claim, a failure to make reasonable accommodation claim requires no discriminatory animus.  Nadler v. Harvey, No. 06-12692, 2007 WL 2404705, at *9   (11th Cir. Aug. 24, 2007) (holding that "McDonnell Douglas burden-shifting is not applicable to reasonable accommodation cases"); see also Jones v. Ga. Dep't of Corr., No. 1:07-CV-1228-RLV, 2008 WL 779326, at *6 (N.D. Ga. Mar. 18, 2008) (applying holding in Nadler, that McDonnell Douglas framework does not apply to reasonable accommodation claims).  "[W]hile disparate treatment claims are concerned with policing employers' actions based on invidious discriminatory intent, '[t]he reasonable accommodation requirement is best understood as a means by which barriers to the equal employment opportunity of an individual with a disability are removed or alleviated.'"  Nadler, 2007 WL 2404705, at *4 (quoting 29 C.F.R. § 1630, app. (2003)).

An ADA violation occurs when a covered entity fails to fulfill its affirmative duty to make "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability" without demonstrating that "the accommodation would impose an undue hardship on the

44

operation of the business."  42 U.S.C. § 12112(b)(5)(A).  Thus, a plaintiff who claims that his employer failed to make reasonable accommodation for his known physical or mental limitation must show that (1) he is disabled, (2) he is otherwise qualified, and (3) a reasonable accommodation was not provided.  Lucas, 257 F.3d at 1255.  Once a plaintiff has shown that he is an otherwise qualified disabled individual within the meaning of the Act and that a defendant has not provided a reasonable accommodation, a defendant must provide a reasonable accommodation unless he can assert undue hardship as an affirmative defense.  Willis v. Conopco Inc., 108 F.3d 282, 286 (11th Cir. 1997) (per curiam).

As to the first element, there is sufficient evidence in the record from which a reasonable jury could find that Mr. Patrick had a record of a substantially limiting impairment and that defendant regarded him as disabled at the time of the  February 10, 2012 fire and his termination in May.  See 42 U.S.C. § 12102(1) (defining disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment").  Viewing the evidence in the light most favorable to plaintiff, the two-week gap between the certifications of light duty restrictions by Mr. Patrick's doctor is not sufficient to override his status as a

45

disabled employee in need of accommodation. Indeed, on February 9, the day before the fire, Chief Lacy had instructed Mr. Patrick to report to him upon arrival each morning for the duration of his light duty assignment (which Chief Lacy ended on February 15). (See DSMF ¶ 25; R-DSMF ¶ 25; PSAF ¶ 93; R-PSAF ¶ 93.) Thus, it appears that Chief Lacy still regarded plaintiff as disabled at the time.

Likewise, Mr. Patrick can establish the second and third elements of his claim. For the reasons set forth supra Part III.B.1, a reasonable jury could find that Mr. Patrick was a qualified individual given his ability to perform the essential functions of a light duty job both at the time of the fire and at his termination. And, defendant failed to accommodate plaintiff in both circumstances by requiring him to work the fire and by terminating Mr. Patrick rather than permitting him to remain in, or reassign him to, a vacant light duty position.

Finally, defendant does not argue that plaintiff's absence at the fire scene would have imposed an undue hardship and cites no case law supporting its assertion that it was not required to excuse Mr. Patrick from firefighting duties under emergency circumstances. (See Def.'s Br. 19 (citing cases involving police treatment of disabled suspect in exigent circumstances).) Accordingly, the undersigned **REPORTS** that plaintiff has raised a triable issue on his failure to

46

accommodate claim, and thus **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED** as to Count IV.

### 3.      Count V:  Retaliation

Count V of the Complaint alleges that defendant retaliated against plaintiff for filing the November 2, 2011 EEOC Charge and for requesting accommodation in violation of the ADA's participation and opposition clauses, respectively.  (Compl. ¶¶ 120-28.)  Defendant argues that plaintiff cannot establish causation between his EEOC Charge and any adverse action and, regardless, Chief Lacy had a legitimate, non-retaliatory reason for terminating Mr. Patrick.  (Def.'s Br. 19-23.)  Defendant observes that Chief Lacy permitted plaintiff to work a light duty position after he filed the Charge, granted his request for FMLA leave in February (more than three months after the Charge), and only terminated plaintiff when he could not produce a full-duty fitness certification (more than six months after the Charge). (Id. at 20.) Plaintiff argues that he has established a prima facie case of retaliation based on his EEOC Charge, requests for accommodation, Chief Lacy's knowledge of the same (Pl.'s Resp. 18 n.6), defendant's numerous adverse employment actions,[61] and the

---

[61] The only adverse employment actions alleged in Count V are Chief Lacy's refusal to retain plaintiff in a light duty assignment and plaintiff's subsequent termination.  (See Compl. ¶¶ 120-28.)  As discussed supra note 54, Mr. Patrick may

close temporal proximity between his protected activities and defendant's actions (id. at 17-21).[62]

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) he engaged in statutorily protected expression (either opposition or participation); (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). As in ADA discrimination claims, a plaintiff may establish a prima facie case of retaliation through direct or circumstantial evidence. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Likewise, if the plaintiff establishes a prima facie case of retaliation, the employer has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action.

---

not use his response to amend the Complaint. Accordingly, the Court need only consider the adverse actions alleged in Count V of the Complaint.

[62] Alternatively, plaintiff points to Chief Johnson's negative statement regarding his EEOC Charge as direct evidence of retaliation in violation of the ADA. (Pl.'s Resp. 5-7.) For the same reasons set forth supra Part III.A.2, that statement is not direct evidence sufficient to support Count V. There is no evidence that plaintiff applied for the receptionist position or that Chief Johnson had any input in the decision-making process regarding plaintiff's removal from light duty and subsequent termination. Thus, the Court must determine whether plaintiff has adduced sufficient circumstantial evidence to support a prima facie retaliation claim.

AO 72A
(Rev.8/82)

Word v. AT&T, 576 F. App'x 908, 912 (11th Cir. 2014) (per curiam).  "If the employer does so, the plaintiff must show by a preponderance of the evidence that the reason provided . . . is pretext for prohibited retaliatory conduct."  Id.

There is no dispute that plaintiff's EEOC Charge and request for an accommodation due to his disability are statutorily protected conduct under the ADA.[63]  See Standard, 161 F.3d at 1328 (explaining that a plaintiff engages in statutorily protected activity when requesting an ADA accommodation if he "had a good faith, objectively reasonable belief that he was entitled to those accommodations under the ADA").  Likewise, it is clear that defendant's refusal to grant plaintiff's repeated requests for an open light duty position and subsequent termination are adverse employment actions.

With regard to causation, however, more than three months elapsed between plaintiff's November 2, 2011 EEOC Charge and Chief Lacy's decision to remove plaintiff from light duty on February 10, 2012.  See Thomas v. Cooper Lighting,

---

[63] The ADA's retaliation provision makes it unlawful to discriminate against any person who "opposed any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).  "Acts or practices made unlawful" by the ADA include "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter."  Id. § 12203(b).

49

Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (holding that three to four month disparity between protected expression and adverse employment action is not enough, and collecting cases).  Moreover, there is no indication that Chief Johnson (who specifically referenced Mr. Patrick's EEOC Charge as a reason not to accommodate him) was involved in that decision.  Thus, plaintiff cannot raise a triable issue over his claim that defendant removed him from light duty because he filed an EEOC Charge.

However, Mr. Patrick can establish a prima facie retaliation claim based on the short time that elapsed between his February 13, 2012 request for light duty accommodation, Chief Lacy's rejection of that request on February 13 or 14, and plaintiff's similar request on May 10, followed by his termination on May 14.  Defendant's argument that plaintiff requested FMLA leave in February and, as a result, Chief Lacy could not have honored his request for light duty (Def.'s Br. 22), is not well taken given that plaintiff only sought leave because Chief Lacy declined to accommodate him with light duty.  Thus, Mr. Patrick has established a prima facie case of retaliation in violation of the ADA based on his disability, requests for light duty accommodation, Chief Lacy's immediate rejection of his February request, and plaintiff's termination less than one week after his final request in May.

50

Defendant proffers the same legitimate, non-retaliatory reason for Chief Lacy's actions here as it articulated with regard to plaintiff's ADA discrimination claim–Mr. Patrick's failure to produce a certification that he was fit for full duty. (Def.'s Br. 23.)  For the same reasons set forth supra Part III.B.1, viewing the facts in the light most favorable to plaintiff, a factfinder could conclude that reason is a pretext for retaliation.  Light duty positions were available at the time of plaintiff's termination, and defendant employed another firefighter/EMT who suffered a non-occupational injury in one such position.  Thus, Mr. Patrick has presented sufficient evidence to discredit defendant's reason and show that defendant may have retaliated against him for seeking accommodation.  See Word, 576 F. App'x at 912-13 (explaining that plaintiff may show pretext in ADA retaliation case by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence") (internal citations and quotation marks omitted).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Mr. Patrick's ADA retaliation claim be **GRANTED**

51

regarding his EEOC Charge but **DENIED** as to his request for light duty accommodation, and that he be permitted to proceed on part of Count V.

## IV.   CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [43] be **DENIED** as to plaintiff's FMLA claims (Counts I and II) and ADA failure to accommodate claim (Count IV), and **GRANTED IN PART** as to portions of his ADA discrimination claim (Count III) and ADA retaliation claim (Count V).

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 3rd day of December, 2014.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

52