**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JOEY PATRICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-CV-1344-RWS |
| HENRY COUNTY, GEORGIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**<u>ORDER</u>**

This case comes before the Court for consideration of the Final Report and Recommendation [71] of Magistrate Judge Walter E. Johnson recommending that Defendant's Motion for Summary Judgment [43] be denied as to Plaintiff's FMLA claims (Counts I and II) and ADA failure to accommodate claim (Count IV), and granted in part as to portions of his ADA discrimination claim (Count III) and ADA retaliation claim (Count V).  After carefully considering the Report and Recommendation, the objections thereto, and the Record, the Court enters the following Order, accepting in part and rejecting in part the Report and Recommendation.

## Background

Defendant objects to the R&R's finding that summary judgment should be denied as to Plaintiff's claims for interference with his leave rights and retaliation under the FMLA, as well as to Plaintiff's claims of discrimination, failure to accommodate, and retaliation under the ADA. Before analyzing these intertwined claims, the Court notes that it must construe all facts in the light most favorable to Plaintiff. See Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002) (noting that on a motion for summary judgment, the court "view[s] the record and draw[s] all reasonable inferences in the light most favorable to the non-moving party"). Applying this standard, and for the purposes of considering Defendant's objections, the Court has reviewed the record and finds that there is sufficient evidence from which a jury could find the following:

> Plaintiff was exposed to meningitis while on duty and treating a patient in August 2010. He never fully recovered, and by August 2011, he was diagnosed with adhesive arachnoiditis. Plaintiff was absent intermittently due to his symptoms.
> In October 2011, Plaintiff took FMLA leave. On November 30, 2011, Plaintiff's pain management physician released him to work for sixty days but limited him to light-duty work. In December 2011, Chief Lacy assigned Plaintiff to a temporary light-duty position at the Fire Department headquarters. Plaintiff

signed an agreement acknowledging that the County was offering him a "temporary light-duty job" not to exceed six months. But if Plaintiff's doctor released him to regular-duty status before the end of six months, he would return to his regular job duties.

Then, in January 2012, the Fire Department changed its light-duty policy such that light-duty assignments would only be available to employees injured on the job.

On February 10, 2012, Chief Lacy wrote Plaintiff a letter stating that his sixty-day light-duty assignment would end on February 15, and requiring Plaintiff to present a medical clearance form signed by his physician releasing him to full duty without restrictions by that date. So, on February 13, 2012, Plaintiff's physician submitted a note stating that Plaintiff remained under his care but that his light-duty status needed to be extended another 30 days.

On February 13 or 14, Chief Lacy informed Plaintiff that there was no longer a light-duty position available. However, some light-duty positions were available, and Chief Lacy hired someone to fill a vacant receptionist position. Moreover, Plaintiff's injury appears to be related to the meningitis he contracted on the job, and the new department policy stated that light-duty positions would be available to those injured on the job. And even if he was not injured on the job, it appears that light duty positions were available, but Chief Lacy determined that Plaintiff would not be placed in one.

On February 14, 2012, Plaintiff submitted a request for FMLA leave beginning on February 16. Plaintiff's doctor submitted a certification in support of that request, stating that Plaintiff was on light-duty restrictions. Plaintiff reported for light duty on February 16, but he was told that there were no assignments for him. Unable to resume regular work, and denied a light-duty assignment, Plaintiff took FMLA leave.

Defendant mailed Plaintiff a notice confirming that his leave was approved effective February 16 through May 10. The notice stated that a fitness-for-duty certificate would be required before

> Plaintiff's employment would be restored.
> On May 1, 2012, Plaintiff received a letter informing him that his FMLA leave period concluded on May 10. On May 10, Plaintiff's physician submitted a certification that Plaintiff could work but was still restricted to light-duty assignments. Plaintiff e-mailed Chief Lacy stating that he could work light duty. On May 14, 2012, Chief Lacy terminated Plaintiff.

The Court emphasizes that these are only possible findings a jury could make based on the evidence. The Court does not suggest that it would find these facts, only that evidence would support these findings. Therefore, the Court will utilize these facts in its analysis of Defendant's objections.

## Discussion

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's Final R&R. Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (internal quotations marks and citation omitted). Where no objection to the Final R&R is made, it need only be reviewed for clear error. Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006). Where objections are made, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been

4

made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990).

## I.    FMLA Interference (Count I)

Defendant objects to the R&R's finding that summary judgment should be denied as Plaintiff's claim in Count I for unlawful interference with Plaintiff's FMLA rights. Plaintiff's FMLA interference claim is that "[d]efendant interfered with Patrick's FMLA rights when it did not return him to the 'position of employment held by [him] when the leave commenced.' *i.e.*, the light duty position." (Pl's Resp. [56] at 29-30 (quoting Turner v. Fla. Prepaid College Bd., 522 F. App'x 829, 834-35 (11th Cir. 2013)).) In the Objection, Defendant agrees with the conclusion in the R&R that following FMLA leave, "[a]n employee has the right. . . 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1267 (quoting 29 U.S.C. § 2614(a)(1)(A)).  Defendant objects to the finding in the R&R that the position to which Plaintiff was entitled to be returned was the light-duty position he occupied from December 2011 through February 15, 2012. Defendant points out that Chief Lacy informed Plaintiff on February 10,

5

2012 that his light-duty assignment would expire on February 15, 2012. Plaintiff was informed that in order to return to duty on February 16, Plaintiff would have to have his physician complete and sign the Henry County Fire Department Medical Clearance Return to Work form stating that Plaintiff was released to return to full duty without any restrictions.

Instead, Plaintiff's physician submitted paperwork on February 13, 2012 stating that Plaintiff remained under his care and extending Plaintiff's need for light duty by 30 days. Chief Lacy informed Plaintiff that there was no longer a light-duty position available. On February 14, 2012, Plaintiff submitted a request for FMLA leave beginning on February 16. In support of that request, Plaintiff's doctor submitted an FMLA certification. On February 28, 2012, Henry County granted Plaintiff's FMLA leave request retroactive to February 16, 2012, with his 12 weeks of leave expiring on May 10.

At the expiration of Plaintiff's FMLA leave, Plaintiff's physician submitted a Fitness-For-Duty Certification stating that Plaintiff was restricted to light duty. Plaintiff was unable to produce a Fitness-For-Duty Certification for reinstatement to his full-duty firefighter position because he was not able to perform the duties of a full-duty firefighter at that time.

6

Defendant asserts that Plaintiff is not entitled to be returned to a better or different situation than the one he left behind at the beginning of his FMLA leave. "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.R.F. § 825.216(a). On the date that the FMLA leave began, February 16, 2012, Plaintiff was no longer in a light-duty position but had been reassigned to a full-duty position, conditioned on certification from his physician. Defendant argues that under these circumstances, Plaintiff was not entitled to assignment to a light-duty position at the end of his FMLA leave, and the Court agrees. Therefore, Defendant's Objection to the conclusion in the R&R that summary judgment should be denied with respect to Count I is **SUSTAINED**. Defendant is **GRANTED** summary judgment as to Plaintiff's interference with FMLA leave claim in Count I of the Complaint.

## II.     FMLA Retaliation (Count II)

The Court adopts the R&R's findings of applicable law related to FMLA retaliation. Defendant argues that the R&R placed undue reliance on temporal proximity, but that no reasonable fact finder could find retaliation from the

7

mere fact that Plaintiff was terminated four days after the expiration of FMLA leave. Furthermore, Defendant argues that a failure to accommodate under the ADA cannot support a retaliation claim under the FMLA.

As the R&R stated, temporal proximity can serve as evidence of causation. Although Defendant contends that the timeline of events undermines a finding of retaliation, the Court finds that there are factual disputes a jury must resolve. A jury could accept Defendant's rationale that the May 14 termination was the result of Defendant's February 10 requirement (before the February 14 request for FMLA leave) that Plaintiff return to work on full duty. Still, a jury does not have to accept that rationale and could find that Defendant retaliated against Plaintiff because he had been exercising his FMLA leave rights throughout October and November, and again in February through May, culminating in his termination four days after returning from leave. Plaintiff's situation was ongoing and evolving, so focusing solely on February 10 and February 14 omits significant context. Thus, the close temporal proximity between Plaintiff's return from leave and his termination in May, along with Defendant's refusal to accommodate Plaintiff, is evidence that Defendant could

have been motivated to terminate Plaintiff because he exercised his FMLA rights.

In another objection, Defendant argues that a failure to accommodate under the ADA cannot support an FMLA retaliation claim.  Moreover, Defendant argues that the county was clearly justified in terminating Plaintiff. Yet the very rationale Defendant relies on is disputed because, as explained below, there is sufficient evidence of pretext.  Whether Plaintiff's termination was a failure to accommodate or retaliation for taking FMLA leave is disputed because the series of events giving rise to this cause of action cannot be parsed from Plaintiff's ADA claims on a motion for summary judgment.  Instead, a jury should hear Plaintiff's claims and resolve whether (1) Defendant was motivated to retaliate (if it retaliated at all) by Plaintiff's use of leave, or (2) Defendant retaliated by refusing to accommodate Plaintiff (and thus terminated him) solely based on his disability.

For these reasons, Defendant's objections are **OVERRULED** as to the FMLA retaliation claim in Count II.

9

## III. Discrimination under the ADA (Count III)

The Court adopts the R&R's findings of applicable law related to discrimination under the ADA. As for Count III, Defendant objects to the R&R's finding that there is evidence of pretext because there were vacant light-duty positions available for Plaintiff when he was terminated. Indeed, that fact is disputed because Plaintiff shows that the Fire Department had a policy of providing light-duty assignments to employees injured on the job. Even if Plaintiff was not injured on the job, Defendant's very policy implies that there were light-duty positions available. A jury could thus find that Defendant discriminated against Plaintiff by refusing to offer him one of these jobs.

There is also evidence that light-duty positions were available because Defendant gave other employees such positions, including Mr. Hodges, who was arguably similarly situated because he was restricted to light-duty work. Mr. Hodges worked light duty for years. Furthermore, there is testimony in the record that other positions may have been available. A jury could find that light-duty work was available in both February and May 2012 when Defendant stated that none was available. Accordingly, there is evidence of pretext.

Defendant next asserts that Plaintiff failed to identify a specific vacancy at the time of his termination. But Plaintiff shows that he repeatedly asked for and made himself available for light-duty work. Evidently, Defendant had a policy of providing what it termed "light-duty work" to some injured employees, and so a jury could find that Plaintiff's request for light-duty work was sufficient to identify the type of work he was capable of performing. And it is undisputed that he actually performed some light-duty tasks, so a jury could reasonably infer that he was requesting to continue similar assignments.

Relatedly, Defendant disputes that Plaintiff could perform the essential functions of any light-duty positions. Yet Plaintiff's performance of previous light-duty assignments is evidence that he was capable of performing these functions. Accordingly, a jury could find that Defendant was a qualified individual under the ADA.

For these reasons, Defendant's objections are **OVERRULED** as to the ADA discrimination claim in Count III.

## IV. Failure to Accommodate under the ADA (Count IV)

The Court adopts the R&R's findings of applicable law related to failure to accommodate under the ADA. Defendant again argues that Plaintiff cannot

11

show that a light-duty position was available at the time of his termination or that he was qualified for one.  As the Court found above, there are factual disputes on both fronts.  Therefore, at a minimum there is a jury issue as to Defendant's failure to accommodate in May 2012, and so Defendant is not entitled to summary judgment on Count IV.  Consequently, the Court **OVERRULES** Defendant's objections to Count IV.

## V.    Retaliation under the ADA (Count V)

The Court adopts the R&R's findings of applicable law related to ADA retaliation.  Defendant argues that no inference of retaliation can be made regarding Defendant's denial of Plaintiff's light-duty request on February 13 or 14, 2012, because Defendant had already told Plaintiff on February 10 that he needed to present a fitness-for-duty certification for full duty by February 15.

Again, this is an issue for a jury.  A jury could find evidence of retaliation based on the chain of events leading up to the denial of Plaintiff's request.  For example, while Plaintiff was on light-duty status, Defendant changed its policy in January 2012 to not allow light-duty assignments for employees not injured on the job.  So, (1) Chief Lacy's February 10 letter informing Plaintiff that he had to return to full-duty work or would receive no work at all, (2) Defendant's

denials of Plaintiff's requests for light-duty work (backed by a doctor's opinion), coupled with (3) evidence that light-duty positions were available for other employees when Plaintiff was fired create a factual dispute as to whether Defendant retaliated against Plaintiff for continuing to request accommodations for his injury.

Defendant additionally asserts that the February denial of the light-duty request was not an adverse employment action because Plaintiff was not permitted to work during that time since he was on FMLA leave. Yet before he took leave, there is evidence that Plaintiff was cleared by a doctor to work light-duty assignments, Plaintiff requested such assignments, and then Plaintiff was told he had to return to full-duty work. A jury could thus infer that Plaintiff then decided to take FMLA leave because he was denied light-duty work and could not yet return to full duty.

The numerous factual disputes in the record preclude summary judgment on Plaintiff's ADA retaliation claim. As such, Defendant's objections are **OVERRULED** as to Count V.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [43] is **GRANTED** as to Plaintiff's unlawful interference with FMLA leave rights claim (Count I), his ADA discrimination claim regarding his transfer to the rove position, and his ADA retaliation claim regarding his EEOC Charge, and it is otherwise **DENIED**.

**SO ORDERED**, this  31st  day of March, 2015.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)