IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOEY PATRICK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:13-CV-01344-RWS |
| HENRY COUNTY, GEORGIA, | : |
| | : |
| Defendant. | : |

## ORDER

This case comes before the Court on Defendant's Motion in Limine [99]. After a review of the record, the Court enters the following Order.

## Background

This case arises out of Plaintiff Joey Patrick's employment with the Henry County Fire Department. A full recitation of the facts can be found in the Magistrate Judge's Final Report and Recommendation. (Dkt. [71].) For the purposes of this Order, the Court briefly recites the procedural history. Plaintiff filed this action on April 23, 2013 against Defendant Henry County. (Compl., Dkt. [1].) Plaintiff alleges claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and disability discrimination, failure to accommodate, and retaliation under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Defendant moved for summary judgment, and on March 31, 2015, the Court granted that motion in part and denied it in part. (March 31, 2015 Order, Dkt. [78].) The Court granted summary judgment on Plaintiff's unlawful interference with FMLA leave rights claim (Count I), his ADA discrimination claim arising out of his transfer to a "roving" position, and his ADA retaliation claim arising out of his Equal Opportunity Employment Commission ("EEOC") charge. Otherwise, the Court denied Defendant's motion.

Accordingly, the following of Plaintiff's claims remain for trial: retaliation under the FMLA (Count II), disability discrimination under the ADA (Count III), failure to accommodate under the ADA (Count IV), and retaliation under the ADA (Count V). On October 30, 2015, the parties filed a Consolidated Pretrial Order [94]. In response to Plaintiff's representations in that order, Defendant now brings its Motion in Limine [99].

## Discussion

As an initial matter, Defendant argues that Plaintiff is attempting to assert a new theory of the case: that Defendant's illegal conduct caused an injury that rendered Plaintiff unable to work. Plaintiff responds that he asserted

2

in his Complaint that he "was forced to perform full duty job duties and ... suffered an on the job injury." (Compl., Dkt. [1] ¶ 1.) The Court, however, agrees with Defendant that this assertion is too broad and vague to allow Plaintiff to now proceed on the theory that Defendant is liable for damages arising out of Plaintiff's permanent inability to work, which was caused by his contracting MRSA. Plaintiff claims he contracted MRSA in connection with his foot injury, the "on the job injury" alleged in the Complaint. Plaintiff claims this injury was a result of Defendant's illegal conduct. In turn, that illegal conduct is the subject of the Complaint: Defendant's failure to accommodate under the ADA. Defendant's alleged violations of the ADA and the FMLA are the primary issues in this case. The other allegations surrounding Plaintiff's subsequent illnesses and injuries, while unfortunate, were not adequately pled in the early stages of this case such that Defendant could have defended against them. These allegations introduce questions of causation that cannot be first raised at this stage of the proceedings. Accordingly, Plaintiff may not proceed under this new theory of the case. Instead, the trial will focus on the claims that survived summary judgment: FMLA retaliation, ADA disability discrimination, ADA failure to

3

accommodate, and ADA retaliation.

Turning now to Defendant's Motion, Defendant moves *in limine* to exclude certain evidence from consideration at trial.  First, Defendant moves to exclude testimony from Plaintiff's treating physicians, whom Defendant claims are witnesses recently disclosed in violation of Federal Rule of Civil Procedure 26.  Defendant claims that Plaintiff identified his treating physicians–Dr. Ramon Espinal, Dr. Stephen Felton, Dr. Annamarie Paulson, Dr. Kimberli Carpenter, Dr. Erroll Bailey, Dr. Alvaro Lopez, and Dr. Shanthalaxmi Iyer–as potential witnesses for the first time in his pretrial order.  Because, according to Defendant, Plaintiff was required to disclose those witnesses during discovery pursuant to Rule 26(a), their testimony should not be permitted at trial.  In response, Plaintiff argues that he identified all of those witnesses in the course of discovery, specifically as a response to Defendant's Interrogatory No. 17.  That interrogatory asked, "To the extent not previously identified, please identify by name and address each medical doctor, counselor, health care professional or practitioner of the healing arts you have visited in connection with this lawsuit."  Plaintiff answered that he had been treated by Dr. Felton, Dr. Paulson, Dr. Espinal, Dr. Carpenter, Dr. Bailey, Dr. Lopez, and Dr. Iyer, as

4

well as by unknown doctors at Newton General Hospital.  Plaintiff also states that he produced the relevant medical records from these doctors during discovery.  Defendant, however, argues that Plaintiff's disclosures do not comply with the requirements of Rule 26.  Defendant argues that because these physicians will offer testimonial expert evidence at trial, Plaintiff was required to comply with Rule 26(a)(2)(A).  Additionally, the Local Rules of this court require that expert witnesses be disclosed "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery." LR 26.2.C, N.D.Ga.  If the party does not comply with this disclosure requirement, the Local Rules operate to bar the testimony of the expert, unless the Court expressly authorizes the noncompliant party based on a showing that the party's failure to comply was justified.  As such, Defendant argues that the physicians should not be allowed to testify at trial.

      Plaintiff argues that his treating physicians are fact rather than expert witnesses.  Fact witnesses are subject to different disclosure requirements

5

under the Federal and Local Rules, and Plaintiff claims to have complied with those requirements.  Defendant argues that, even if Plaintiff's treating physicians are treated as fact witnesses, Plaintiff did not adequately declare his intention to use them as witnesses at trial.

The Court's first step, then, is to determine whether Plaintiff's treating physicians should be considered fact or expert witnesses.  Depending on that classification, the Court will then determine whether Plaintiff met his disclosure obligations to Defendant.

Plaintiff characterizes his treating physicians as "fact witnesses that will be called to testify about their treatment and evaluation of Plaintiff, not expert witnesses."  (Pl.'s Resp. to Def.'s Mot. in Lim., Dkt. [110] at 5.)  Plaintiff cites a case from the Ninth Circuit for the proposition that no expert disclosures were required.  Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817 (9th Cir. 2011).  That case held that treating physicians are not the kind of expert witnesses that automatically trigger an obligation to produce a written expert report.  Id. at 819-20 ( holding that "when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must comply with

6

Rule 26(a)(2)").

Indeed, the designation of a treating physician as a fact versus an expert witness depends on the nature of the testimony the witness intends to offer. For example, the Eleventh Circuit Court of Appeals considered the testimony of an oral surgeon who testified that the patient's jaw had a hairline fracture and opined that the fracture was a result of a blow to the left side of his face. The Court of Appeals held: "Her diagnosis of the injury itself, that [the patient]'s jaw was fractured, would be permissible lay testimony, but her statement about the cause of the injury was, as she admitted, a 'hypothesis.'" United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005). "[T]he ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses." Id. (quoting Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1202 n. 16 (3d Cir. 1995). Accordingly, when a treating physician testifies as to the cause of an injury or illness, he or she testifies as an expert. Id.; see also Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (holding that, where the cause of an injury would not be obvious to a lay juror, expert testimony is required).

For witnesses that intend to present evidence under Federal Rule of

7

Evidence 702, 703, or 705 (that is to say, expert witnesses) who are not required to submit a written expert report, the party proffering the witness must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). That disclosure is *required* under the Federal Rules. Plaintiff does not argue that he complied with the expert disclosure requirements of Rule 26.[1] Accordingly, the Court must next consider whether Plaintiff's failure to disclose warrants exclusion of any opinion testimony offered by the treating physicians.

Where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

---

[1] Plaintiff does argue that he identified his treating physicians in response to one of Defendant's interrogatories and that he provided the medical records produced by those treating physicians. However, production of medical records is inadequate to show compliance with Rule 26(a)(2)(C)(ii), which requires a summary of the witness's expected fact and opinion testimony. "Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a summary." Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-019094-JEC, 2013 WL 1189493 at *6 (N.D.Ga. March 23, 2013) (quoting Ballinger v. Casey's Gen. Store, Inc., No. 1:10-cv-1439-JMS-TAB, 2012 WL 1099823 at *4 (S.D. Ind. Mar. 29, 2012) (Baker, Mag. J.)) (internal citations omitted).

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the past, other judges in this district have applied a five-factor test when determining whether an insufficient disclosure is harmless. Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-CV-01094-JEC, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013) (Carnes, J.); Bruce v. Classic Carrier, Inc., No. 1:11–cv–01472–JEC–JCF, Oct. 31, 2012 Order of Mag. J. Fuller, Dkt. No. [50] at 7–10 (citing Cambridge Univ. Press v. Becker, 1:08–cv–1425–ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept.21, 2010) (Evans, J.)). These factors are:

> (1) the surprise to the party against whom the evidence would be offered;
>
> (2) the ability of that party to cure the surprise;
>
> (3) the extent to which allowing the evidence would disrupt the trial;
>
> (4) the importance of the evidence; and
>
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Cambridge Univ. Press, 2010 WL 6067575, at *3.

First, Defendant has been "surprised" by Plaintiff's intent to call his treating physicians as witnesses. The Court finds that Plaintiff did not provide

9

Defendant with sufficient notice that he intended to call these physicians as expert witnesses.  And in fact, in Plaintiff's Answers and Objections to Defendant's First Interrogatories to Plaintiff, Plaintiff did not identify any of the treating physicians as a person Plaintiff contends was either 1) "an eyewitness to any of the events at issue in this litigation; and/or 2) [h]as relevant knowledge of any of the facts, circumstances or issues involved in this litigation."  (Ex. Q to Def.'s Mot. in Lim., Dkt. [99-2] at 6-8.)  So even though Plaintiff has characterized these treating physicians as fact witnesses, he did not previously identify them as persons who had relevant knowledge of any of the facts involved in the litigation.  Accordingly, the Court finds that calling these physicians as *either* expert or fact witnesses causes "surprise" to Defendant.

Here, discovery has closed and Defendant has not had the opportunity to cure the "surprise" of expert testimony by Plaintiff's treating physicians.  Defendant will not have its own expert at trial to rebut any opinion testimony regarding causation of Plaintiff's illness or injuries.  Accordingly, Plaintiff's treating physicians may not give opinion testimony.

But Plaintiff's treating physicians may testify about *facts*.  Allowing

10

Plaintiff to call his treating physicians as fact witnesses does not cause the same kind of incurable prejudice to Defendant. Defendant was aware of the fact of Plaintiff's diagnosis and accordingly can be prepared to defend against that. At trial, the Court shall require Plaintiff to make a proffer of the subjects to which the witnesses will testify prior to allowing those witnesses to testify. That testimony may include fact testimony only. In making the determination of whether proposed testimony is "fact" or "opinion," the Court will apply Federal Rule of Evidence 701. Non-expert (or lay) witnesses may only testify to opinions or inferences "which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. The treating physicians may testify about their observations based on personal knowledge, including their treatment of Plaintiff. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (citing Davoli v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999)). Plaintiff's treating physicians may not answer hypothetical questions. See id. Nor may they offer opinions as to the cause of Plaintiff's illness or injury. Plaintiff's treating physicians may only

11

offer factual testimony.

Defendant also argues that Plaintiff should be precluded from offering his own opinion as to how he contracted meningitis.  The Court **DENIES** this request *in limine*.  While Plaintiff may not offer testimony that would fall under the auspice of Federal Rule of Evidence 702, Plaintiff may testify to the facts of his experience and Defendant may raise objections to Plaintiff's testimony at trial.

Defendant further wishes to preclude Plaintiff from relaying opinions of medical providers through his own testimony.  Defendant argues that Plaintiff should not be permitted to testify as to the ramifications of meningitis or adhesive arachnoiditis.  Plaintiff wants to testify to his diagnoses and the symptoms he experiences.  He argues that expert testimony is not required to prove symptoms, manifestations, and causes of disability.  The cases Plaintiff cites for that proposition are inapposite.  (Pl.'s Resp. to Def.'s Mot. in Limine, Dkt. [10] at 8-9.)  The majority of those cases are not controlling on this Court[2]

---

[2] The one Eleventh Circuit case cited by Plaintiff concerns a plaintiff who would be permitted to testify *as an expert* under Federal Rule of Evidence 702 about the effect of another plaintiff's disability on his inability to work as a craftworker, given the plaintiff's experience supervising craftworkers for eleven years.  Mullins v. Crowell, 228 F.3d 1305, 1316 (11th Cir. 2000).  Plaintiff makes no contention here

and primarily concern two topics: whether a plaintiff's testimony can create a genuine issue of material fact at the summary judgment stage[3] and whether a plaintiff may testify about the effects of diseases that are generally understood by lay people.[4]  Here, the Court considers whether Plaintiff may testify *in front of the jury* about his diagnoses and the symptoms he suffers from his disabilities.  As the Third and First Circuits have recognized,

> "[t]here is certainly no general rule that medical testimony is that he should be qualified as an expert.

---

[3]  For example, Plaintiff cites to a Ninth Circuit case holding that medical evidence is not required to "establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage." Head v. Glacier Nw. Inc., 413 F.3d 1053, 1058 (9th Cir. 2005) (abrogated on other grounds in Univ. of Tex. Sw. Med. Ctr. v. Nassar, ––– U.S. ––––, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).  That case does not establish that Plaintiff may offer opinion testimony in this case.  Rather, that case supports the principle that in the Ninth Circuit, a plaintiff's testimony may suffice to establish a genuine issue of material fact. Id.  See also McAlindin v. County of San Diego, 192 F.3d 1226 (9th Cir. 1999).

[4]  For example, Lederer v. BP Products North America considered the kind of testimony required to establish HIV's impact on the limitation of the plaintiff's major life activities.  Lederer v. BP Products N. Am., No. 04 CIV. 9664, 2006 WL 3486787, at *4 (S.D.N.Y. Nov. 20, 2006).  The district court in that case held, "at the summary judgment stage, plaintiff is no more required to provide medical testimony showing that HIV creates a 'risk of transmitting a dread and fatal disease to one's child,' than a blind plaintiff would be required to submit medical testimony showing substantial limitation of the ability to drive." Id. (quoting Bragdon v. Abbott, 524 U.S. 624, 641 (1998)).

13

> always necessary to establish disability. Some long-term impairments would be obvious to a jury (e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatment and symptoms over a substantial period that would [allow] the jury [to] determine that [the plaintiff] did suffer from a disability. In other words, the necessity of medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge."

Marinelli v. City of Erie, Pa., 216 F.3d 354, 360 (3d Cir. 2000) (quoting Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996)) (modifications in original). Here, meningitis and adhesive arachnoiditis are not the kinds of diseases that are generally understood by lay people. Again, Plaintiff may testify as to the facts of his diagnosis and the symptoms he has experienced. He may not, however, testify as to any matter–such as causation or prognosis–that requires specialized knowledge.

Defendant also objects to a number of Plaintiff's proposed exhibits. Defendant moves to exclude Plaintiff's Proposed Exhibit 26, the "physician's restrictions" letter. The Motion in Limine is **DENIED** as to Proposed Exhibit 26 and any objection must be raised at trial.

Defendant next moves to exclude Plaintiff's Proposed Exhibit 59, the

Social Security determination of Plaintiff's disability.  Defendant's Motion in Limine is **DENIED** as to Plaintiff's Proposed Exhibit 59.  Defendant may, however, raise objections at trial, and the purpose for which Plaintiff may introduce that Exhibit is limited by the Court's ruling above that Plaintiff may not assert a "new" theory of the case.

Defendant moves as well to exclude Plaintiff's Proposed Exhibits 7, 11, and 54 on grounds that they are not probative of remaining claims.  The Court agrees.  Defendant's Motion in Limine is **GRANTED** as to Plaintiff's Proposed Exhibits 7, 11, and 54.

Defendant moves to exclude Plaintiff's Proposed Exhibit 16, which relates to Defendant's refusal to allow Plaintiff to access donated sick leave, as not probative of a fact of consequence.  Plaintiff argues that proposed exhibit is probative of Defendant's discriminatory and retaliatory intent.  The Court **DENIES** Defendant's Motion in Limine as to Plaintiff's Proposed Exhibit 16.

Plaintiff's Proposed Exhibits 17, 43, and 47 related to charges of discrimination filed with the EEOC.  Defendant moves to exclude all three.  Proposed Exhibit 17 is admissible, but Defendant's Motion in Limine is **GRANTED** as to Proposed Exhibits 43 and 47.  Those charges were filed after

15

Plaintiff's termination and, accordingly, could not have had an effect on the terminating decision-maker.

Defendant moves to exclude Plaintiff's Proposed Exhibit 48. Because Plaintiff has withdrawn that exhibit, Defendant's Motion in Limine with respect to that exhibit is **DENIED AS MOOT**.

Defendant also moves to exclude Plaintiff's Proposed Exhibits 57, 60, 61-65, and 69-76. The Court **DENIES** these objections *in limine*; Defendant may make these objections at trial. Plaintiff must lay the proper foundation for the admission of each exhibit and may not, as discussed above, assert a new theory of the case.

Finally, the Court addresses Defendant's suggestion that Plaintiff's claim for failure to accommodate under the ADA arising out of Defendant's conduct in February 2012 did not survive summary judgment. The February conduct remains in the case. The Court clarifies that its Order adopting the Report and Recommendation did not exclude that claim. Rather, in the portion of the March 31, 2015 Order cited by Defendant for the proposition, the Court overruled Defendant's objections and adopted the Magistrate Judge's Report and Recommendation. The Report and Recommendation found that factual

issues remained for Plaintiff's failure to accommodate claim arising out of Defendant's conduct in both February and May of 2012.  Accordingly, the parties should prepare to address both at trial.

## Conclusion

In accordance with the foregoing, Defendant's Motion in Limine [99] is **GRANTED in part** and **DENIED in part**.

**SO ORDERED**, this 23rd day of May, 2016.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)